**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**JAMIE BRICENO,** individually and on behalf of others similarly situated,

Plaintiff,

v.

**VIVE ORGANIC, INC.**,

Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Jamie Briceno ("**Plaintiff**), individually and on behalf of all others similarly situated, by and through his attorneys, brings this Class Action Complaint against Defendant Vive Organic, Inc. ("**Defendant**" or "**Vive**") and alleges as follows:

## NATURE OF THE ACTION

1. Defendant creates, sells, distributes, and markets Vive Organic wellness shots that are sold in grocery stores, big box stores, convenience stores, and online. This class action challenges Defendant's false and misleading marketing of its "Immunity Boost" product line of wellness shots. All of the packaging for every product at issue displays the words "Immunity Boost" ("**Immunity Boost Representation**") as the name and identifier of the product. The front of every product also displays the words "Doctor Crafted" with an image of a stethoscope shaped like a heart, and the product's packaging states, "Doctor Crafted For Immunity," "Doctor Crafted," "Our Holistic Doctors craft the perfectly blended shot," and displays images of three people identified as "Dr. Elliot," "Dr. Kshirsagar," and "Dr. Allen" who are dressed in what appear to be lab coats (the text and images together, "**Doctor Crafted Representation**").[1]

[1] The Immunity Boost Representation and the Doctor Crafted Representation are referred collectively as "**Representations**."

2. The Immunity Boost products ("**Products**" [2]) include such varieties as Immunity Boost Ginger & Turmeric, Immunity Boost Vitamin C, Immunity Boost Elderberry, and Immunity Boost Cayenne. The packaging on all variations of the Products prominently displays the Representations.

3. The following are examples of images of the Products' packaging:




Image 1. Vive Organic Immunity Boost Original Ginger & Turmeric.

---

[2] The term "Products" refers to Vive Organic shots in all varieties that make the Representations. All varieties of the Products are substantially similar because they all display the same deceptive Representations alleged in this complaint. Plaintiff reserves the right to amend the complete list of the Products included in this lawsuit as information arises through discovery.




Image 2. Vive Organic Immunity Boost Elderberry.

4. The following is an image that approximates the size of the actual 2-ounce Products. All varieties of the Products are uniform in their display of "Doctor Crafted" and "Immunity Boost" on the bottles.




Image 3. Varieties of the Products.

5. Defendant markets the Products as being formulated by doctors to have boosting effects on the immune system. This is false and unsubstantiated, as the Products cannot "boost" the immune system. Indeed, no food or dietary supplement can "boost" one's immune system. Defendant has no medical evidence to substantiate its Immunity Boost Representation despite its Doctor Crafted Representation.

6. Defendant is therefore liable to Plaintiff and the members of the proposed class for selling the Products with Representations that are deceptive, misleading, and false.

7. Plaintiff brings this action on behalf of himself and proposed class of similarly situated New York consumers. Plaintiff seeks monetary damages, and other relief as permitted by law.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a putative class action, (3) there are members of the putative class who are diverse from Defendant, and (4) there are more than 100 proposed class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

9. This Court has personal jurisdiction over the Defendant because the claims asserted in this complaint arise from Defendant's contacts with this District. Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers, and/or representatives, operated, conducted, engaged in, and carried on a business venture in New York, and/or marketed, advertised, distributed and/or sold the Products, committed a statutory violation within New York related to the allegations made herein, and caused injuries to Plaintiff and the proposed class members, which arose out of the acts and omissions that occurred in the state of New York, during the relevant period. At that time, Defendant was engaged in business activities in New York.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant conducts substantial

business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District through the promotion, sale, and marketing of the Products in this District. Venue is also proper because Plaintiff resides in this District.

## PARTIES

11. Plaintiff Briceno is an individual consumer who, at all times material hereto, is and was a resident and citizen of New York, New York.

12. Plaintiff purchased the Products several times during the statutory limitations period, including in 2026 at a Whole Foods Market in Brooklyn, New York.

13. Plaintiff saw and relied upon the Product's Representations when purchasing the Product. He believed that the Product would "boost" the immune system and that the Product was formulated by medical doctors to do so based on sound scientific evidence. He would not have purchased the Product at the price he paid or at all had he known that the Product does not provide an immunity boost, are not proven to provide an immunity boost, or were not crafted by physicians with relevant expertise.

14. Defendant is a corporation, incorporated under the laws of California, with its principal place of business in Sacramento, California. Upon information and belief, Vive controls the Products, presiding over their recipes, labeling, marketing, and distribution.

15. Defendant sells the Products throughout the United States, including New York. The Products, including those purchased by Plaintiff and the proposed class members, are available at various retail and grocery stores throughout New York. Defendant authorized the false, misleading, and deceptive marketing, advertising, distribution, and sale of the Products in New York.

## COMMON FACTUAL ALLEGATIONS

### I. Vive Uses a Uniformly Deceptive Labeling Scheme.

16. Amid rising health-related concerns around the world, consumers are becoming increasingly proactive about protecting their health. Consumers ranked protection as high in importance in their health and wellness needs and reported that they would pay more for products with protection claims.[3] This, in turn, has caused a rise in the global immune health supplements market, reaching a value of nearly $25 billion in 2023 and expected to reach $58 billion by 2032.[4]

17. Since the company's inception in 2015, Defendant's annual sales have grown exponentially by 400% on average, as the overall wellness shot industry gained momentum amid the COVID-19 pandemic.[5]

18. In 2022, the founder of Vive, Wyatt Taubman, admitted that immunity was the number one reason why consumers purchase wellness shots, with 75% of Defendant's juice shots

---

[3] *Health and Wellness Consumer Needs in 2022* (published Jan. 11, 2022), NielsenIQ, available at https://nielseniq.com/global/en/insights/analysis/2022/health-and-wellness-consumer-needs-in-2022/ (62% of U.S. consumers ranked protective needs as high in importance; 66% would pay more for products with hygiene/safety/protection claims or practices; and 68% of consumers say that protective needs have become more important over the last 2 years) (last accessed Sept. 18, 2026).

[4] *Immune Health Supplements Market to hit USD 58 billion by 2032, says Global Market Insights Inc,* (published on December 3, 2024), Globe Newswire, available at https://www.globenewswire.com/news-release/2024/12/03/2990609/0/en/Immune-Health-Supplements-Market-to-hit-USD-58-billion-by-2032-says-Global-Market-Insights-Inc.html (last accessed on Sept. 15, 2026).

[5] Douglas Yu, *Immunity-Boosting Company Vive Organic Raises $13 Million Series B Funding To Expand Wellness Shot Business* (published July 23, 2020), Forbes, available at https://www.forbes.com/sites/douglasyu/2020/07/23/immunity-boosting-company-vive-organic-raises-13-million-series-b-funding-to-expand-wellness-shot-business/ (last accessed Sept. 15, 2026).

currently focused on immunity and Vive leading the market "with the largest number of SKUs that are focused on boosting the immune system."[6]

19. The Products are marketed and promoted as immunity-boosting, which reasonable consumers understand as a promise of preventing disease and defending against infections and illness. Your immune system "protects your body from harmful substances, germs and cell changes that could make you ill."[7] Accordingly, the Representations reasonably suggest the Products increase protection against disease.

20. "Immunity Boost" is the name and identifier of the Product, which prominently appears on all packaging, including each individual bottle. The phrase "Doctor Crafted" and the image of a stethoscope in the shape of a heart also appear on the front of every bottle of the Product. Defendant states on the Product's packaging in large capital letters that the Products are "Doctor Crafted For Immunity." The reasonable messaging from the Representations is that (1) the Products are formulated by medical experts specifically to bolster the immune system and (2) the Products, in fact, do so.

## II. Defendant's Immunity Boost Representation Is False and Misleading.

21. A food or supplement cannot "boost" one's immunity to better fight against disease, illness, or infections. Numerous reputable medical institutions and qualified experts have consistently debunked this claim. Articles authored by medical and scientific experts as well as educational materials from reputable medical institutions—a small sampling of which are provided

[6] Mary Ellen Shoup, *Suja Life and Vive Organic form wellness shots powerhouse: "We believe both brands will continue to grow at a double-digit pace"* (published Oct. 27, 2022), Food Navigator, available at https://www.foodnavigator-usa.com/Article/2022/10/27/suja-life-and-vive-organic-form-wellness-shots-powerhouse-we-believe-both-brands-will-continue-to-grow-at-a-double-digit-pace/ (last accessed Sept. 15, 2026).

[7] Institute for Quality and Efficiency in Health Care, *In brief: How does the immune system work?* (updated June 6, 2023), National Center for Biotechnology Information, available at https://www.ncbi.nlm.nih.gov/books/NBK279364/ (last accessed Sept. 15, 2026).

herein—explain the false and misleading nature of such "immune-boosting" claims.

22. Harvard Health Publishing, a division of Harvard Medical School, explains: "Many products on store shelves claim to boost or support immunity. But the concept of boosting immunity actually makes little sense scientifically. In fact, boosting the number of cells in your body — immune cells or others — is not necessarily a good thing."[8]

23. In a November 2024 article published by the American Association of Immunologists, Dr. Aimee Pugh Bernard similarly argues that the very concept of "immunity boosting" is misleading and, indeed, that too much activity of the immune system could in fact cause health problems:

> So many influencers on social media are encouraging us to buy supplements and invest in quick and easy life hacks to "boost your immune system" that claim to keep you healthy and fight off illness before you get sick.
>
> Sounds amazing, right? Too good to be true?
>
> Spoiler alert – it is!
>
> These claims are not based on science or what is known about immune function. Healthy immune systems don't need costly supplements or quick and easy life hacks to work properly. The immune system works best when it is perfectly balanced. Scientific experts on the immune system – immunologists – know that too much of an immune reaction could result in allergies, autoimmune disorders or chronic inflammation.…[9]

---

[8] *How to Boost Your Immune System*, Harvard Health Publishing, Harvard Medical School, available at https://www.health.harvard.edu/staying-healthy/how-to-boost-your-immune-system (last accessed Sept. 18, 2026).

[9] Aimee Pugh Bernard, Ph.D., *Immune Health Is All About Balance—An Immunologist Explains Why Both Too Strong and Too Weak an Immune Response Can Lead to Illness* (published Nov. 9, 2024), Immunology Explained, American Association of Immunologists, available at https://immunologyexplained.aai.org/news/immune-health-is-all-about-balance-an-immunologist-explains-why-both-too-strong-and-too-weak-an-immune-response-can-lead-to-illness/ (last accessed Sept. 17, 2026).

24. Joe Schwarcz, Ph.D. and director of McGill University's Office for Science and Society, shared a similar opinion in a 2021 article entitled "Boost Your Knowledge about Boosting Your Immune System":

> [T]he truth is that "boosting the immune system" is a scientifically meaningless claim. So is "supports immune function." These are marketing terms, not scientific ones.
>
> The immune system is not like a muscle the size of which can be boosted by exercise. It is a highly complex system of cells, tissues, organs and a host of chemicals they produce to help the body fight infections and other diseases.
>
> [T]here is one way that we can boost immunity. Vaccination! That actually can be shown to produce antibodies against invading organisms.[10]

25. In a 2022 article (updated 2024) on the veracity of immunity "boosting" supplement claims, clinical immunologist Zachary Rubin explained: "The whole term 'boosting your immune system' is inaccurate.... It's a term used by the wellness industry to sell products that are wildly unproven scientifically." Dr. Rubin also emphasized the risk of overactive immune response: "If you're going to 'boost' the immune system, you may actually cause more problems on the flip side by creating a hyperactive immune system."[11]

26. In rejecting the concept of "boosting" one's immune system, medical experts distinguish between an overactive immune system and a "balanced" immune system. For example, in a June 2020 article published by Cedars-Sinai Medical Center, immunologist Dr. Suzanne Cassel explained that a "stronger" immune system is not necessarily a desired outcome: "You

---

[10] Joe Schwarcz, Ph.D., *Boost Your Knowledge About Boosting Your Immune System*, McGill University, Office for Science and Society, available at https://www.mcgill.ca/oss/article/critical-thinking-health-general-science/boost-your-knowledge-about-boosting-your-immune-system (last accessed Sept. 15, 2026).

[11] Katie MacBride, *Do Supplements Boost Immunity? A Doctor Debunks the Wellness Claim* (originally published Apr. 6, 2022, updated Feb. 20, 2024), Inverse, available at https://www.inverse.com/mind-body/boost-immunity-debunk (last accessed Sept. 18, 2026).

actually don't want your immune system to be stronger, you want it to be balanced."[12]

27. Defendant's Immunity Boost Representation is thus false and misleading because it contravenes established medical science on how the immune system actually works.

## III. Defendant's Immunity Boost Representation Implies Substantiation that the Products Lack.

28. By touting on the Product packaging that they are "Doctor Crafted" and "Doctor Crafted For Immunity," Defendant implies that its Immunity Boost Representation is substantiated with sound medical evidence when it is not.

29. Because the very concept of "immunity boost" is scientifically meaningless and inaccurate (except in the context of vaccinations) reliable evidence does not exist to substantiate any such claim.

30. The Nutrition Source, published by the Department of Nutrition at Harvard T.H. Chan School of Public Health, advises:

> During the flu season or times of illness, people often seek special foods or vitamin supplements that are believed to boost immunity. Vitamin C and foods like citrus fruits, chicken soup, and tea with honey are popular examples. Yet the design of our immune system is complex and influenced by an ideal balance of many factors, not just diet, and especially not by any one specific food or nutrient. [13]

[12] Cedars-Sinai Staff, *Can You Really Boost Your Immune System* (published June 1, 2020), Cedars-Sinai, available at https://www.cedars-sinai.org/stories-and-insights/expert-advice/boosting-your-immune-system (last accessed Sept. 15, 2026).

[13] *Nutrition and Immunity*, The Nutrition Source, Harvard T.H. Chan School of Public Health, available at https://nutritionsource.hsph.harvard.edu/nutrition-and-immunity/ (last accessed Sept. 15, 2026).

31. Likewise, Jennifer J. Shanahan, RD, CDN, writing for Stony Brook Medical Center, states:

> Despite claims you may have seen on the internet, there's no magic food or pill that is guaranteed to boost your immune system. What you want to do is to support your immune system so it can function normally, and that's not the same thing as boosting or supercharging it. [14]

32. Robert H. Shmerling, MD, Senior Faculty Editor and Editorial Advisory Board Member of Harvard Health Publishing, writes in his September 11, 2023 article entitled "*Immune boosts or busts? From IV drips and detoxes to superfoods*":

> [Sellers of supplements] use phrases like "boosts immune function" and "supports immune health." These terms have always seemed vague to me. More importantly, they're confusing:
>
> - *Boosting immunity* is what vaccinations do. They prime your immune system to help fight off a specific infectious organism (like the flu shot before each flu season).
> - *Immune support* typically describes vitamins such as vitamin C, or other nutrients necessary for a healthy immune system. It's true that a deficiency of vital nutrients can cause poor immune function. But that doesn't mean a person with normal levels of nutrients can expect supplements to improve their immune system. [15]

*Id.* (italics in original).

33. Dr. Shmerling continues:

> **Can products marketed as immune boosters actually boost immunity?**
>
> Unless you have a deficiency in a key nutrient, such as vitamin C or zinc, the short answer is no.
>
> That is, there's no convincing evidence that any particular product meaningfully improves immune function in healthy people.… This goes for individual foods as well. None has ever been shown to improve immune

---

[14] Jennifer J. Shanahan, RD, CDN, *Can I Boost My Immune System So I'm Less Likely to Get Sick?*, Stony Brook Medicine, State University of New York, North Suffolk Cardiology, available at https://www.stonybrookmedicine.edu/Northsuffolkcardiology/ourblog/immunity-boost (last accessed Sept. 15, 2026).

[15] Robert H. Shmerling, MD, *Immune boosts or busts? From IV drips and detoxes to superfoods*, Harvard Health Publishing, Harvard Medical School, available at https://www.health.harvard.edu/blog/immune-boosts-or-busts-from-iv-drips-and-detoxes-to-superfoods-202309112972 (last accessed on Sept. 15, 2026) (italics in original).

> function on its own. It's the overall quality of your diet, not individual foods, that matters most.[16]

34. In fact, it is difficult—if not impossible—to test the impact of specific ingredients on the immune system as a whole. The National Institutes of Health explains:

> Measuring the impact of dietary supplement ingredients, such as vitamins, minerals, or other substances, on the immune system is difficult because the immune system is a complex network of organs, tissues, and cells. No single, straightforward measure of immune system function and resistance to disease exists.[17]

35. Similarly, Harvard Health Publishing states:

> Walk into a store, and you will find bottles of pills and herbal preparations that claim to "support immunity" or otherwise boost the health of your immune system. Although some preparations have been found to alter some components of immune function, thus far there is no evidence that they actually bolster immunity to the point where you are better protected against infection and disease.[18]

36. Defendant nowhere points consumers, on its Products or on its website, to any scientific evidence to substantiate its Immunity Boost Representation. Instead, Defendant states on its website various buzz words, including "research backed," "proven by science," "doctor crafted," "expertly formulated," and "clinically supported." *See* https://viveorganic.com/products/vive-organic-sampler-pack (last accessed Sept. 18, 2026). Defendant also claims the Products contain "functional ingredients that are backed by clinical studies and delivered in doses that truly matter." *Id.* Defendant, however, provides no explanation as to which ingredients, which functions, what clinical studies, or how the doses "truly matter." *Id.*

---

[16] *Id.* (emphasis in original).

[17] *Fact Sheet for Health Professionals on Dietary Supplements for Immune Function and Infectious Diseases*, National Institutes of Health, Office of Dietary Supplements, available at https://ods.od.nih.gov/factsheets/ImmuneFunction-HealthProfessional/ (last accessed Sept. 15, 2026).

[18] *How to boost your immune system*, *supra* note 8.

37. Defendant cites no scientific evidence to substantiate its Immunity Boost Representation because there is none.

**IV. Defendant's Doctor Crafted Representation Is False and Misleading.**

38. The front of every Product displays the words "Doctor Crafted" with an image of a stethoscope shaped like a heart. The Product's packaging states, "Doctor Crafted For Immunity," "Doctor Crafted," "Our Holistic Doctors craft the perfectly blended shot," and displays images of three people identified as "Dr. Elliot," "Dr. Kshirsagar," and "Dr. Allen" who are dressed in what appear to be lab coats.

39. Reasonable consumers understand Defendant's Doctor Crafted Representation to mean that the Products were crafted by licensed physicians with relevant medical expertise. In other words, the Doctor Crafted Representation conveys an assurance of scientific support for the Products' claimed benefits, which extends beyond the mere involvement of individuals bearing the title "Doctor."

40. Defendant's Doctor Crafted Representation is false because, upon information and belief, the Products were not crafted by physicians with expertise in immunology.

41. In prior versions of Defendant's website, Defendant explained that three "doctors" were integral to the company's "story." Defendant represented that Vive's "team of holistic wellness doctors worked to craft the most synergistic balance of fresh pressed superfoods."

42. The following is from the About Us/Our Story tab that was previously available at https://viveorganic.com/pages/our-story.




Image 4. Defendant's Prior Website.

43. Dr. Suhas Kshirsagar is not a licensed physician but is an Ayurvedic practitioner. *See* https://ayurveda-caam.org/professional-directory/suhas-kshirsagar (last accessed Sept. 17, 2026). Dr. David Allen is a licensed physician whose specialty is "Family Medicine." *See* https://health.usnews.com/doctors/david-allen-602350 (last accessed Sept. 17, 2026). Dr. Erica Elliott is a licensed physician "specializing in family practice and environmental medicine." *See* https://www.ericaelliottmd.com/about-5 (last accessed Sept. 17, 2026).

44. Defendant has removed all references to "Dr. Allen" and "Dr. Kshirsagar" from its origin story on its website. Their names and images, however, remain on the Product's packaging as part of the Doctor Crafted Representation.

45. Defendant now claims on its website only that Vive's founder, Wyatt Taubman, is the originator of the wellness shots, "[w]orking alongside Dr. Erica Elliot."




Image 5. Defendant's Website at https://viveorganic.com/pages/our-story
(last accessed September 17, 2026).

46. Even if the Products were in fact "crafted" by Dr. Elliot, Dr. Kshirsagar, and Dr. Allen as represented on the Products' packaging, Defendant's Doctor Crafted Representation misleads reasonable consumers. As the FTC makes clear, advertising must be evaluated according to its overall "net impression," including its language, product names, and imagery.[19]

[19] Federal Trade Commission, *Health Products Compliance Guidance* 5, § III.A.1 ("Identifying Express and Implied Claims"), Example 1; 12, § III.B.1 ("Ads That Refer to a Specific Level of Support") (Dec. 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/Health-Products-Compliance-Guidance.pdf (last accessed Sept. 18, 2026).

47. Plaintiff and other reasonable consumers understand Defendant's Doctor Crafted Representation to mean that the Products were formulated based on scientific evidence or clinical trials showing that the Products provide a measurable "boost" to the immune system.

48. Defendant's Doctor Crafted Representation is misleading because the Products were not formulated based on scientific evidence or clinical trials showing that the Products provide a measurable "boost" to the immune system.

49. As discussed above, no dietary supplement has ever been shown to "boost" the immune system as the Products claim because the very concept of "boosting" immunity, as used by marketers of products and supplements, is scientifically meaningless, inaccurate, and misleading.

## V. Consumers Relied on Defendant's Representations to Their Detriment.

50. Plaintiff and all similarly situated reasonable consumers necessarily saw and relied on Defendant's Representations when purchasing the Products. "Immunity Boost" is the very name and identifier of the Products, and the Representations are prominently displayed on every packaging of the Product. Defendant's Representations misled consumers, induced purchases based on deceptive labeling, and allowed Defendant to charge a price premium for a product that fails to perform as promised. Defendant's Representations are material affirmations of fact that became part of the benefit of the bargain between Defendant and consumers who purchased the Products.

51. Defendant's false and misleading Representations dupe reasonable consumers into believing that the Products were formulated by doctors with relevant expertise based on scientific evidence about the effects of the Products and/or their ingredients on the human immune system. Based on that reasonable assumption, consumers pay premium prices for the Products. However,

the Products do not have the doctor-crafted, immunity-boosting feature for which Plaintiff and the proposed class members paid.

## CLASS ALLEGATIONS

52. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class (the "Class").

> All consumers who purchased the Product in New York for personal or household use, not for resale, during the statute of limitations for each cause of action alleged.

53. Excluded from the Class are (1) the judicial officer(s) to whom this action is assigned, and the members of their immediate families; (2) Defendant, its subsidiaries and affiliates, parents, successors, predecessors, and any entities in which Defendant or its parent has a controlling interest, and their current or former employees, officers, and directors; (3) individuals who allege personal bodily injury resulting from the use of the Product; and (4) resellers of the Product.

54. **Numerosity**. The members of the Class are so numerous that joinder of all members is impracticable. Although the exact number is unknown to Plaintiff at this time, it is estimated that the Class consists of thousands of purchasers geographically dispersed throughout New York. The Class is ascertainable by records in Defendant's possession.

55. **Commonality.** Common questions of law or fact predominate. They include without limitation:

a. Whether the Products boost immunity as Defendant claims;

b. Whether the Products were formulated by doctors with the appropriate expertise based on scientific evidence about the effects of the Products or their ingredients on the human immune system;

c. Whether a reasonable consumer would consider the purported doctor-crafted, immune-boosting benefits to be material;

d. Whether Defendant's Representations are deceptive, misleading, or false to a reasonable consumer;

e. Whether Defendant's labeling renders the Product misbranded under applicable federal laws;

f. Whether Plaintiff and members of the Class paid a price premium for the Products as a result of Defendant's misconduct; and

g. Whether Plaintiff and members of the Class are entitled to monetary damages.

56. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff purchased the Products based on the same Representations, suffered similar injuries, has the same claims against Defendant relating to the same course of conduct, and is entitled to relief under the same legal theories.

57. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class and has no interests antagonistic to those of the Class. Plaintiff has retained counsel who are experienced in prosecuting complex class actions, including actions with issues, claims, and defenses similar to the present case. Counsel intends to prosecute this action vigorously and ensure the interests of the Class will not be harmed.

58. **Predominance.** Common questions of law and fact predominate over any questions affecting only individual members of the Class.

59. **Superiority.** A class action is superior to other available methods for this case's fair and efficient adjudication. Class treatment will permit many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of

effort and expense. Plaintiff is unaware of any difficulties likely to be encountered in managing this action that would preclude its maintenance as a class action.

60. Accordingly, this class action may be maintained under Fed. R. Civ. P. 23(b)(3).

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF NEW YORK GBL § 349

61. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

62. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . . ."

63. The conduct of Defendant alleged herein constitutes violations of GBL § 349.

64. Defendant made its untrue or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

65. Plaintiff and Class members are entitled to damages, interest, and attorneys' fees and costs, as well as statutory damages of $50 per unit purchased

### COUNT II
### VIOLATION OF NEW YORK GBL § 350

66. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

67. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

68. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such

> advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

69. The conduct of Defendant alleged herein constitutes violations of GBL § 350.

70. Defendant made the untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

71. Plaintiff and Class members are entitled to damages, interest, and attorneys' fees and costs, as well as statutory damages of $500 per unit purchased.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully requests that the Court enter judgment in their favor and against Defendant, as follows:

a. Certifying the Class pursuant to Federal Rule 23, and appointing Plaintiff and his counsel to represent the Class;

b. Declaring that Defendant's conduct constitutes violations of GBL § 349 and § 350.

c. Awarding all actual, compensatory, statutory, and punitive damages to which Plaintiff and members of the Class are entitled;

d. Awarding reasonable attorneys' fees and costs, including expert witness fees and expenses, as permitted by law;

e. Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law; and

f. Granting such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: September 25, 2026

Respectfully Submitted,

**REESE LLP**

*/s/ Sue J. Nam*
Sue J. Nam
Kate J. Stoia
100 West 93rd Street, 16th Floor
New York, New York 10025
Phone: (212) 643-0500
Email: *snam@reesellp.com*
*kstoia@reesellp.com*

**REESE LLP**
Michael R. Reese
5544 Central Avenue
St. Petersburg, FL 33707
Phone: (212) 643-0500
Email: *mreese@reesellp.com*

**LAUKAITIS LAW LLC**
Kevin Laukaitis (321670)
954 Avenida Ponce DeLeon
Suite 205 - #10518
San Juan, PR 00907
Phone: (215) 789-4462
Email: *klaukaitis@laukaitislaw.com*

*Attorneys for Plaintiff*
*and the Putative Class*